# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

CORINTHIAN BOSTIC,       )
                              )
       Petitioner,    )
                              )
v.                     )      CV420-68
                              )      CV420-251
                              )      CR416-216
                              )
UNITED STATES OF AMERICA  )
                              )
       Respondent.   )

## <u>REPORT AND RECOMMENDATION</u>

Corinthian Bostic was convicted by a jury for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *United States v. Bostic*, 736 F. App'x 228, 229 (11th Cir. 2018); *see also* doc. 93 at 2.[1] He filed the instant motion to vacate his sentence, pursuant to 28 U.S.C. § 2255, asserting multiple grounds for relief.

## I.    Background and Procedural History

In February 2016, officers with the Savannah-Chatham Metropolitan Police Department initiated a traffic stop of a vehicle based on a window-tint violation. Doc. 23 at 8. Sergeant Ruben Colon and

---

[1] The Court cites to the criminal docket in case CR416-216 unless otherwise noted.

Officer Daniel Kang conducted a search of the vehicle, belonging to Bostic's wife, after noting the smell of marijuana. They found a Smith and Wesson .40-caliber semiautomatic pistol in the trunk. Doc. 74 at 4, 16. Bostic's appointed trial counsel, Robert Mock, Jr., filed a motion to suppress the firearm and ammunition. Doc. 23 at 1. The Government opposed suppression, arguing that Bostic's motion was unsupported by record citations as required by this Court's Local Rule 12.1, and that the body-worn camera footage from the incident conclusively showed that the stop, arrest, and search were reasonable. Doc. 24 at 3-5. The Court entered an Order, doc. 28, terminating the hearing on the Motion to Suppress because Bostic had not alleged facts that, if established in his favor, would require the grant of relief. Doc. 28 at 6. The Order found that Bostic's Motion did not offer "minimal evidentiary support for each factual assertion set forth in his motion." *Id.* at 2, 5, 5 n. 3, 6. Mock withdrew the Motion to Suppress, docs. 29 & 30.

Mock then filed a Motion to withdraw as attorney. Doc. 35. He noted that Bostic's wife had filed a Bar complaint against him on Bostic's behalf, which stemmed from Mock's refusal to further pursue the withdrawn Motion to Suppress. Doc. 35 at 1. The Magistrate Judge held

a hearing and denied the Motion to Withdraw from the bench, doc. 41, and neither party appealed the Magistrate Judge's Order to the District Judge*, see generally*, docket.

The case proceeded to trial where a condensed and clipped version of the body-worn camera video was played and the jury heard testimony from Kang and Colon, gun detective Jonathan Puhala, an ATF agent named Ronald Rhodes, and Bostic's wife. Doc. 74 at 38-39. Importantly, Puhala also testified regarding an audio-recorded confession in which Bostic claimed ownership of the firearm. Doc. 74 at 37. The audio-recording was also played, resulting in the jury hearing a statement from Bostic that he had some alcohol earlier but that he was "good" and not drunk. Doc. 99-5 at 1-2. The audio also reflected that Bostic told the detective that he purchased the firearm at a highly discounted rate from "a little dude," doc. 99-5 at 7-8, and this testimony conflicted with testimony from Bostic's wife, who testified that the gun belonged to her late father and that Bostic was unaware that the gun was in her car, doc. 74 at 65. Bostic also acknowledged that the cost for the gun, $250, was low, suggesting he knew it was stolen, and that he knew he was not permitted to have a gun. Doc. 99-5 at 8. At closing, Mock argued that

because there were no fingerprints or DNA information available, the police did not definitively tie Bostic to the gun.  Doc. 86 at 7.  However, the Jury returned a guilty verdict.  Doc. 74 at 75.

At sentencing, Bostic received enhancements based on his criminal history which included two controlled-substance convictions and his offense level was increased by two points under U.S.S.G. § 2K2.1(b)(4)(A), for possessing a stolen firearm.  PSR ¶ 12-13.  He was designated an armed career criminal ("ACC") based on his criminal history.[2]  His total offense level was 33 with a criminal category of V, with an advisory guideline range of 210 to 262 months' imprisonment.  Doc. 75 at 5.  He faced a statutory, mandatory-minimum sentence of 15 years' imprisonment based on the armed-career-criminal designation.  *Id.*  Trial counsel filed no objections to the Pre-Sentence Report ("PSR").  *Id.* at 4-5.  At sentencing, Bostic declined to make a personal statement, but did voice his frustration with the points given in the PSR.  *See id.* at 4-6.  He was sentenced to 210 months' imprisonment.  Doc. 75 at 7; *see also* doc. 62 (Judgment).

---

[2] The Armed Career Criminal Act ("ACCA") increases the sentence of, among others, a felon in unlawful possession of a firearm if that person has at least three prior convictions for a "violent felony,"  18 U.S.C. § 924(e)(2)(B), or a "serious drug offense," 18 U.S.C. § 924(e)(2)(A), or both.

Bostic appealed his conviction, arguing that the Magistrate Judge erred in denying the Mock's Motion to Withdraw. Bostic "raised no other challenge to the final judgment." *Bostic*, 736 F. App'x at 230. The Eleventh Circuit affirmed the judgment, holding that it lacked jurisdiction to review Bostic's claim because Bostic did not first seek review of the decision from the district court, thereby waiving the argument. *Id.* In addition, because Bostic "raised no other challenge to the final judgment in his appellate brief," he abandoned any argument he could have made otherwise. *Id.* The Supreme Court denied Bostic's petition on April 1, 2019. *Bostic v. United States*, 139 S. Ct. 1465 (2019); *see also* doc. 139-2. Bostic then filed a Motion to Vacate, doc. 93, an Amended Motion to Vacate, doc. 94, a second Motion to Vacate, doc. 95, and a second Motion to Amend, doc. 138. Respondents filed the present Motion to Dismiss, doc. 139, to which Bostic responded, doc. 140, and Respondents replied, doc. 141.

Before the Court considers the Motion, however, it must address certain matters regarding the docket. Petitioner's multiple attempts at supplementing and amending his original Motion to Vacate constitute impermissible piecemeal amendments. *See Calhoun v. Bergh*, 769 F.3d

409, 411 (6th Cir. 2014), cert. denied sub nom. *Calhoun v. Booker*, 574 U.S. 1161 (2015) ("An amended complaint supersedes an earlier complaint for all purposes . . . that rule applies in this [§ 2255] case as it does in civil cases generally.") (internal quotations omitted)).  However, Respondent refutes them collectively as though they were properly alleged, or at least as though amendment was properly sought.  Thus, the Court will construe the record as though Bostic had properly sought amendment of his Petition to include all grounds rather than finding that his latest filing constitutes the operative pleading superseding all those which came prior.  *Id.*  Moreover, as Bostic has not objected to Respondent's articulation and organization of his many grounds for relief, the Court will rely on Respondent's organizational structure to identify the grounds which Bostic pursues.  Nevertheless, the Court, upon consideration of the Respondent's arguments and as explained below, finds that Bostic's supplemented and amended pleadings do not "relate back" to his original filing, and, had permission from the court been sought for amendment, he would not have received it.  Next, likely due to clerical error, this matter has two civil action numbers assigned, in addition to its original criminal action number.  As dismissal of all

6

claims is warranted, the Court **DIRECTS** the Clerk to cross-docket the present Report and Recommendation in each matter in accordance with the above caption.

## II.   Motion to Dismiss

Bostic's original Motion asserted the following grounds: (1) the magistrate judge erred in denying trial counsel's motion to withdraw; and that counsel was ineffective in the following ways; (2) failing to inform Bostic of his right to appeal the magistrate judge's denial to the district court; (3) sharing comments regarding racial prejudice by Bostic's wife with another attorney; (4) abandoning the motion to suppress; (5) failing to the play the entire video of the traffic stop and failing to present additional witnesses at trial; (6) failing to file a notice of appeal after trial but before sentencing; (7) failing to challenge his stolen firearm enhancement; (8) failing to challenge the ACCA enhancement under the theories that Bostic was innocent of his state predicate convictions, that his marijuana-distribution conviction did not meet the definition of a serious drug offense, that two of his predicate cocaine-distribution convictions should have counted as one since they were consolidated for judgment, and that his cocaine-distribution convictions should not have

served as predicates under the modified categorical approach; (9) failing to present mitigation evidence regarding the death of his mother and his volunteer work; and (10) failing to challenge his confession.  Doc. 93 at 14-18, 20-25.  Bostic's additional claims, which he attempted to add in his amended and supplemental filings, include claims that counsel was ineffective for: (1) failing to object to the testimony of the arresting officers regarding the window-tint reading and their alleged conflicting testimony, docs. 94 at 27-28; 95 at 29-30; (2) failing to impeach Kang based on a July 2020 termination of employment, doc. 94 at 36-38; 95 at 53; (3) and failing to object to his ACCA designation in light of *United States v. Jackson*, 36 F.4th 1294 (11th Cir. 2022).

Respondent makes several arguments against Bostic's Motion to Vacate: (1) that the claims added to Bostic's supplemental and amended petitions do not relate back to the original claims, and thus they are time barred; (2) that Bostic's new-counsel claim is procedurally barred or defaulted; (3) and that Bostic's counsel was not ineffective under the *Strickland* standard during trial, sentencing, or on appeal.

## III.  Discussion

### A. Relation Back of New Claims

The Antiterrorism and Effective Death Penalty Act ("AEDPA") established a one-year statute of limitations for § 2255 motions. 28 U.S.C. § 2255(f); *Davenport v. United States,* 217 F.3d 1341, 1343 (11th Cir. 2000). When a petitioner files a timely § 2255 motion, and then later files an untimely amended or supplemental motion that raises additional claims, the untimely claims are barred by the statute of limitations unless they "relate back" to the original motion under Federal Rule of Civil Procedure 15(c). *Davenport,* 217 F.3d at 1344. A claim "relates back" if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "[W]hile Rule 15(c) contemplates that parties may correct technical deficiencies or expand facts alleged in the original pleading, it does not permit an entirely different transaction to be alleged by amendment." *Dean v. United States,* 278 F.3d 1218, 1221 (11th Cir. 2002). The United States Supreme Court has cautioned that the "conduct, transaction, or occurrence" language of Rule 15(c) should not be defined "at too high a level of generality," because doing so would defeat Congress's intent to impose a strict time limit on claims for post-conviction relief. *Mayle v. Felix,* 545 U.S. 644,

661-62 (2005) (quotation marks omitted).  Thus, an amended pleading relates back to an original pleading only if both pleadings "state claims that are tied to a common core of operative facts." *Id.* at 664.  Similarly in the Eleventh Circuit, "the untimely claim must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type." *See Davenport*, 217 F.3d at 1344 (quotation marks omitted).

If Bostic's later-filed claims do not "relate back," they are untimely. *See Clay v. United States*, 537 U.S. 522, 527 (2003); *see also* doc. 92 (denying Writ of Certiorari).  Like his initial pleading, Bostic's supplements and amended petitions attempt to bring claims of ineffective assistance of counsel.  His belated claims allege that Mock failed to object to certain aspects of Kang's and Colon's testimony relevant to the window-tint; in Bostic's opinion the testimony conflicted. *See* doc. 94 at 27-28; doc. 95 at 29, 30.  Next, he complains that Mock should have impeached Kang based on his 2020 termination. *See* doc. 94 at 11, 36-38; doc. 95 at 53.  Relying on *Jackson*, 36 F.4th 1294, Bostic also believes that the classification he received as an ACC was faulty because it was based on his cocaine related convictions even though Ioflupane was not

controlled.  Doc. 138 at 2.  Thus, he argues that Mock was ineffective for failing to object to his ACCA designation.  *Id.*

Bostic's three additional claims are not derived from the same set of facts as his original claims, even though they fit into the broader category of ineffective assistance of trial counsel.  *See e.g., Davenport,* 217 F.3d at 1344 (where the supplemental claims involved whether the sentence was proper, whether the counsel improperly relied on a summary report, and whether he advised his client regarding a plea deal, they did not relate back to the original claims that attorney failed to argue the drugs in possession were identified or weighed correctly, or perjurious witness testimony.).  Bostic argues that reliance upon *Davenport* is inappropriate because his allegations are, in part, based upon events that occurred after the date of the pleading being supplemented.  Thus, he attempts to travel under Rule 15(d), which allows a party to serve a supplemental pleading setting out events that happened after the date of the pleading to be supplemented.  *See id.*  To be sure, Bostic seeks to rely on facts which came to light regarding Kang's professionalism much later than when he was convicted.  Doc. 95 at 9. Moreover, his response attempts to argue that the statute for which he

was convicted was later more clearly defined by the Supreme Court and that this clarification requires he be released.  However, Bostic's reliance upon Rule 15(d) is misplaced, as it does not exist to allow petitioners to bypass the requirement that his claims relate back, thus negating the mandate of AEDPA's statute of limitations.  Rather, rule 15(d) allows a claimant to add new *claims*, the facts of which arose after the original complaint or petition was filed *if* they are timely.  *See e.g., Harden v. United States*, 2011 WL 3878315, at *2 n.3 (S.D. Ga. July 29, 2011), *adopted*, 2011 WL 3877072 (S.D. Ga. Aug. 31, 2011).  Bostic does not here seek to add a new count of injury; the grounds he alleges do not represent that he has been more recently harmed than the time of  his trial, conviction, sentencing, and failed appeal.

Bostic's original claims bear no relation to his trial counsel's failures to properly question Kang and Colon, and his arguments as to the propriety of the ACCA designation in his later-filed pleadings is based on a different theory from that in his original filing.  *Compare* doc. 93 at 20-25, *with* doc. 138 at 2.  Thus, Bostic's untimely supplemental and additional claims should be dismissed.  Given that doc. 138 is presented to the Court as a motion seeking amendment, it is construed as such and

should be **DENIED**.  Even though the Court would typically require his

other filings to supersede the original petition, it is clear that the parties

have considered the grounds presented by all pleadings ripe and at issue

before the court.  Having considered the merits of these filings, the

remaining attempts to supplement or amend, docs. 94 and 95, are

likewise construed as motions to amend his original motion to include

these untimely allegations, doc. 93, and should be **DENIED** as well

because they do not relate back.

### B. Trial Counsel's Motion to Withdraw

Respondent argues that the Eleventh Circuit already considered

and rejected Bostic's argument that the Magistrate Judge erroneously

denied his attorney's request to withdraw.  Doc. 139 at 16.  Indeed, Bostic

appealed this decision once his conviction was final.  Docs. 64 & 89.

Furthermore, the Eleventh Circuit considered this exact argument on

appeal, finding that, because Bostic did not first appeal the Magistrate

Judge's order to the district judge, Bostic waived his right to review that

order, and moreover, that it had no jurisdiction to consider it.  *Bostic*, 736

F. App'x at 230 (citing *United States v. Schultz*, 565 F.3d 1353, 1358 (11th

Cir. 2009)).

It is long-settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence that he already raised and that were rejected in his direct appeal.  *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir.2000) ("Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." (internal quotation marks omitted)); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994) ("[P]rior disposition of a ground of error on direct appeal, in most cases, precludes further review in a subsequent collateral proceeding."); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981) ("This Court is not required on § 2255 motions to reconsider claims of error raised and disposed of on direct appeal.").

Though the premise is conceptually reasonable, Respondent provides no precedent specifically relevant to whether grounds waived in the district court, which the appellate court rejects for jurisdictional reasons, constitute a procedural bar.  Instead, Respondent argues that even if the appellate decision does not constitute a direct resolution barring Bostic's claim, it is still procedurally defaulted absent a showing of cause and prejudice.  Doc. 139 at 16.  Bostic offers no meaningful

response to this argument.

Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (citations omitted). There are two exceptions that excuse a procedural default. *See United States v. Frady,* 456 U.S. 152 (1982). Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. *Id.* at 167; *see also Bousley v. United States,* 523 U.S. 614, 622 (1998). The second exception does not appear to be implicated here.[3] Instead, Bostic's original claims included allegations that neither the Magistrate Judge nor trial counsel informed him of his right to appeal the denial of the Motion to Withdraw to the district court, theoretically making a "cause" argument. Doc. 93 at 18; *Lynn*, 365 F.3d at 1235 (citing

---

[3] Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Mills*, 36 F.3d at 1055 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). The Supreme Court has "caution[ed] . . . that tenable actual-innocence gateway pleas are rare . . . ." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). None of the facts Bostic alleges plausibly suggest that such a "rare" circumstance.

*Smith v. Jones,* 256 F.3d 1135, 1145 (11th Cir.2001) (noting "that 'the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'")).

Bostic makes no specific assertions of prejudice in his pleadings and there is nothing in the record that leads the court to infer that the outcome of trial would have been different had Mock's withdrawal been allowed. Indeed, there appears to have been a reasonable basis for the proceedings to develop in the manner they did. As well, the Magistrate Judge adequately examined the issue and properly found that the conflict between Bostic and Mock was not so great that it resulted in a total lack of communication between the defendant and his counsel. *See United States v. Calderon*, 127 F.3d 1314, 1343 (11th Cir. 1997). Additionally, Bostic's arguments as to the Magistrate Judge's failure to inform him of the requirement that he appeal to the District Judge are likewise invalid. *See Schultz*, 565 F.3d at 1362 (citing *United States v. Akinola*, 985 F.2d 1105, 1108 (1st Cir. 1993) ("Moreover, as we pointed out during oral argument, even when such a warning is required, it is necessary only as

part of a Magistrate Judge's report and recommendation to the district judge, 28 U.S.C. § 636(b)(1)(B), (C), and not when the Magistrate Judge issues a non-dispositive order [under § 636(b)(1)(A)].")).  Thus, because Bostic has not established that he was prejudiced by his attorney's continued representation, any argument to excuse his procedural default here fails.

### C. Other Ineffective Assistance of Counsel Claims

Additionally, Bostic alleges ineffective assistance of counsel at trial, sentencing, and on appeal.  A petitioner asserting a claim of ineffective assistance of counsel ordinarily must satisfy the requirements of *Strickland v. Washington*, 466 U.S. 668 (1984); *Conklin v. Schofield,* 366 F.3d 1191, 1201 (11th Cir. 2004).  Under *Strickland*, a petitioner must affirmatively prove both deficient performance and actual prejudice. *Strickland,* 466 U.S. at 687.  The Supreme Court has identified three exceptions to the actual prejudice requirement.  *United States v. Cronic,* 466 U.S. 648 (1984).  Prejudice may be presumed where (1) there is a "*complete* denial of counsel" at a "critical stage" of the trial, (2) "counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing," or (3) under the "circumstances the likelihood that counsel could

have performed as an effective adversary was so remote as to have made the trial inherently unfair." *Id.* at 659-61 (emphasis added). *Cronic's* presumption of prejudice "applies to only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Stano v. Dugger,* 921 F.2d 1125, 1153 (11th Cir.1991) (en banc); *see also, e.g., United States v. Roy*, 855 F.3d 1133, 1144 (11th Cir. 2017) (emphasizing that *Cronic* exceptions are "very narrow" and that the burden to establish their application is "very heavy").

For example, where an attorney consistently opposed the prosecution's case by filing a pretrial motion to suppress the confession, challenged venire and prospective jurors, made an opening statement, asserted numerous objections, moved for a mistrial, cross-examined witnesses, and pursued a strategy which was described by the court as "the best he could with what he had to work with," counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing rendering the presumption unavailable. *Castillo v. Fla., Sec'y of DOC*, 722 F.3d 1281, 1286 (11th Cir. 2013).[4]  Conversely, in *Harding v.*

---

[4] Although *Castillo* and *Harding*, discussed below, involved allegations of ineffective

*Davis,* the attorney "remained silent through virtually the entire trial, except for various remarks indicating that Harding did not desire his assistance," he "did nothing to fulfill the obligations of his position as counsel," he did not examine or cross-examine any witness, did not make a single objection, and he remained silent when the trial judge directed a guilty verdict against the defendant, the petitioner was entitled to the presumption of prejudice.  878 F.2d 1341, 1343-44 (11th Cir. 1989).  The Court finds the present case similar to *Castillo* because Mock did not fail to subject the prosecution's case to meaningful adversarial testing, and thus, to the extent Bostic alleges that prejudice should be presumed here, *see* docs. 93 at 16, 18, 19, he is incorrect.  *See generally*, doc. 74.  Thus, the Court will apply the *Strickland* standard in determining whether Mock was ineffective.

i.   Effectiveness of Counsel During Trial

When considering deficient performance at the guilt stage, "the question is whether there is a reasonable probability that, absent the

---

assistance in the context of a § 2254 petition, the *Strickland* standard does not apply differently in the § 2255 context.  *See, e.g., Winkler v. United States*, 2013 WL 4494971, at *2 (E.D. Tenn. Aug. 20, 2013) ("[Sections] 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other." (citing, *inter alia*, *Davis v. United States*, 417 U.S. 333, 343-44 (1974)).

errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695.  Absent proof of actual prejudice "it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.  Bostic claims that a friend referred an Attorney Chandler to Bostic, and Mock told him certain details about the case.  Doc. 93 at 16. Mock also purportedly told Chandler that Bostic's wife had made racial slurs against white people, which Bostic alleges constitutes racial prejudice towards him.  *Id.* at 19.  By doing this, Mock was, according to Bostic, derelict in his duty to "remain an active advocate and observe a duty of loyal representation to his client," such that he was ineffective. *Id.* at 16-17.  Bostic also alleges that after filing his Motion to Suppress, Mock withdrew it without discussing the decision with Bostic.  *Id.* at 14. Moreover, because the evidentiary support provided in the Motion to Suppress was criticized by the Magistrate Judge, Bostic argues that Mock "displayed his lack of fundamental understanding of the nature of the process of filing motions and preserving the record when he withdrew" the same.  *Id.* at 13-14.  Relatedly, Bostic complains that he instructed Mock to play the entire video of the traffic stop, which

allegedly would have proven that a window tint reading was not performed by the officers and that a field sobriety test was not conducted. *Id.* at 16.   This, in Bostic's opinion, would have supported Bostic's argument that the officers had no probable cause to conduct a search of the trunk of the vehicle.   Bostic additionally argues that Mock failed to present witnesses such as Ebonie Butler, the passenger in Bostic's vehicle at the time of the arrest, and Tony Singleton, an observer of the arrest.   *Id.* at 18.

First, Bostic's vague assertions regarding Mock's unspecified comments appear unrelated to the inquiry into Mock's effectiveness and constitute "conclusory allegations unsupported by specifics" such that they do not warrant further inquiry.   *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (quoting *Stano,* 901 F.2d at 899).   Next, Bostic's assertion that Mock was ineffective because he withdrew a motion which Bostic also criticizes misses the mark.   Indeed, the Magistrate Judge did not reject the Motion to Suppress because it failed to indicate competency by virtue of its form, as suggested by Bostic.   Rather the Motion "fail[ed] to allege any facts establishing a violation of [Bostic's] Fourth Amendment rights."   Doc. 28 at 2; *see also id.* at 5 n.3 ("[T]he detailed

21

factual recitation of the police incident report does not appear to show a violation of his constitutional rights.).   In fact, it simply appeared that the facts did not support suppression.   Consequently, Bostic has failed to show that he had a meritorious motion to suppress, such that trial counsel was ineffective in failing to pursue it.   *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.")

Bostic's other assertions regarding the entirety of the video and remaining untapped witnesses are unsupported.   Bostic claims that the unedited body-camera footage would have shown that his vehicle was already parked at the time of the traffic stop, that no tint reading was performed, and that no sobriety test was performed.   However, he has not shown that he was prejudiced by the fact that the video was condensed. In fact, it appears that all his arguments regarding the video are relevant to his suppression motion; he repeatedly relies on an allegation that the

search of his vehicle was unreasonable. However, given the footage shows the discovery of the weapon, there is no indication that the issue of guilt would have been decided differently if the entirety of the video had been shown. *See Chandler v. United States*, No. 20-13521, 2022 WL 445762, at *2 (11th Cir. Feb. 14, 2022) ("Even assuming counsel's performance was deficient, Chandler cannot show he was prejudiced by the ineffective performance" where video footage of robberies constituted "substantial evidence of his guilt); *King v. United States*, No. 19-CR-20272, 2022 WL 7020660, at *5 (S.D. Fla. Oct. 12, 2022) (finding that even if counsel had subpoenaed additional video footage, there was no reasonable probability that the result of the proceeding would have been different given video evidence of the movant committing crimes charged).

Likewise, Bostic's claim regarding potential witnesses fails. "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." *Waters v. Thomas,* 46 F.3d 1506, 1514 (11th Cir. 1995) (quotation omitted); *see also Body v. United States*, 568 F. App'x 760, 762 (11th Cir. 2014) ("Although [Witness'] potential testimony may have cast some doubt upon the other

evidence introduced at trial, this is insufficient to show that the jury would have believed [the witnesses] testimony over all the evidence in the record."). Since he has not shown any actual prejudice, the Court recommends Bostic's allegations regarding Mock's effectiveness at trial be dismissed.

ii.      Ineffective Assistance During Sentencing

Bostic argues that Mock was ineffective at sentencing for failing to challenge his ACCA and stolen firearm sentence enhancements, failing to provide mitigation evidence, and failing to appeal after trial but before sentencing. *See* doc. 93 at 20-24; *id.* at 18, 25; *id.* at 16. Firstly, Bostic's complaints regarding the timing of his appeal are wholly groundless. *See* Fed. R. App. P. 4(b)(1)(A). Bostic's ACCA enhancement was based on four prior serious drug convictions, of which Bostic argues he is innocent. Doc. 93 at 20. He also argues that his marijuana distribution conviction does not constitute a serious drug offense, *id.*, that two of his convictions were consolidated for judgment and thus should count as only one predicate offense, *id.*, and that his cocaine convictions failed to qualify as predicates under the modified-categorical approach, *id.* at 21-22. Respondent correctly notes that the sentencing court was barred from ignoring a prior

conviction that was not already invalidated in a prior proceeding, and thus his proclaimed innocence of the underlying offenses is unavailing. *See* doc. 139 at 25; *Senter v. United States*, 983 F.3d 1289, 1293 (11th Cir. 2020) (discussing the broad parameters of the prohibition against attacking state court convictions through federal proceedings) (citing *United States v. Phillips*, 120 F.3d 227, 231 (11th Cir. 1997) ("[I]n sentencing a defendant a district court cannot ignore or discount for any purpose a prior conviction that has not been invalidated in a prior proceeding, unless there was an un-waived absence of counsel in the proceedings resulting in that conviction.")).

Similarly, Bostic's argument regarding the firearm enhancement is invalid because this determination did not impact his sentencing which was controlled by his ACCA enhancement.  Doc. 65 at 5 (PSR ¶ 18, 20 (sealed)).  As to Bostic's mitigation arguments, courts have routinely found that counsel is not required to present all mitigation evidence.  *See Burger v. Kemp, 483 U.S. 776 (1987)* (lawyer not required to investigate and present all available mitigating evidence to be reasonable); *Chandler v. United States*, 218 F.3d 1305, 1319 (11th Cir. 2000) (collecting cases); *Tarver v. Hopper,* 169 F.3d 710, 715 (11th Cir. 1999) (Counsel's efforts at

sentencing were reasonable even though Counsel did not present additional available witnesses); *Waters*, 46 F.3d at 1511 (noting the Eleventh Circuit and the Supreme Court have held counsel's performance to be constitutionally sufficient when no mitigation evidence was produced even though it was available).  In any event, even though Mock informed the sentencing court that Bostic wished to present information regarding mitigation, when the time arose for making a statement, Bostic refused.  *See* doc. 75 at 6 (Where Bostic replied "No, sir" to the Judge's invitation to make a statement for the Court to consider in mitigation of his sentence.).  Again, Bostic provides no meaningful response to Respondent's arguments.  Thus, the Court recommends that Bostic's claims of ineffective assistance of counsel during sentencing be dismissed.

        iii.    Ineffective Assistance on Appeal

Bostic's remaining grounds for ineffective assistance of counsel are relevant to his appeal.  Bostic was represented on appeal by Mathew Kyle Winchester.  Doc. 79.  Bostic claims that Winchester failed to raise the issue of the enhancement in his appellate brief.  Doc. 93 at 23.  Again, Bostic complains that the presentence report used to enhance his

sentence "shows undisputedly that some of the facts of the arrests involving Mr. Bostic are unknown," but he does not specify what the other facts are and fails indicate why the Court should discredit the underlying convictions now. *Id.* He does not specify what other documents would say, or what errors were made, but simply he argues that if documents other than the PSR would have been used to validate his underlying convictions and arrests, the "errors" contained within the report would have become clear. *Id.* Bostic also argues that his appellate counsel was ineffective for failing to challenge his confession, doc. 93 at 23-24, and he complains of the conflict in testimony created by his own pretrial confession that he purchased the gun around two years prior to his arrest and his wife's in-court testimony that the gun was her father's. Doc. 74 at 62, 65-66.

Bostic's arguments regarding the PSR and the sentence enhancement are too vague and conclusory to merit relief. *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011); *see also Borden v. Allen*, 646 F.3d 785, 810 (11th Cir.2011) ("The § 2254 Rules and the § 2255 Rules mandate 'fact pleading' as opposed to 'notice pleading,' as authorized under Federal Rule of Civil Procedure 8(a),"

which is a heightened pleading standard.)   Bostic may not "simply laundry-list [his] claims and hope that the court will develop (hence, litigate) them on [his] behalf." *O'Kelley v. Warden, Ga. Diagnostic Prison*, 2020 WL 2772769, at *3 (S.D. Ga. May 28, 2020) (internal quotation marks and alterations omitted) (citing *Holmes v. United States,* 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations")).   Additionally, the conflict in testimony between what he confessed about the purchase of the gun and how his wife testified about inheriting the gun is not beneficial to his case and the failure cannot be attributed to counsel, but instead generates doubt as to his or his wife's credibility.

Likewise, Bostic's claims that his confession was "obtained by exploitation of an illegal arrest" and was not admissible fail.  Doc. 93 at 23.  He asserts that Kang testified that Bostic stated he had smoked marijuana about an hour before the arrest, a fact which should have been argued on appeal and which he now argues negates his confession.  *Id*. However, the transcript of the trial reflects no such testimony.  *See generally* doc. 74.  It appears Bostic intends to rely on the fact that he informed the gun detective, Puhala that he drank alcohol earlier in the

day, a communication which Puhala did relate to the Court. *See id.* at 40; doc. 99-5 at 1-2. The transcript of the confession reflects that Bostic told Puhala he had some alcohol at "like 4:00" that morning, and although it is unclear when the interview was conducted, Bostic insinuates that enough time had passed to where he was no longer intoxicated.[5]  Doc. 99-5 at 2. The record as a whole simply does not support Bostic's contention that the confession was involuntary. *See Almon v. Jernigan*, 715 F.2d 1505, 1507 (11th Cir. 1983) (where defendant appeared sober and alert when questioned, willingly spoke after being given his Miranda rights, trial court properly concluded that confession was made freely and voluntarily); *Grayson v. Thompson*, 257 F.3d 1194, 1230 (11th Cir. 2001).  Each of these issues preclude any finding that Bostic suffered any prejudice. Thus his claims of ineffective counsel during his appeal should be dismissed.

IV.    *Rehaif* Claim

Finally, Bostic responded to Respondent's Motion to Dismiss with a claim based on *Rehaif v. United States*, ___U.S.___, 139 S. Ct. 2191 (2019), where he alleges that he can overcome any procedural bar because

---

[5] *See* doc. 23 at 8, indicating that the traffic stop occurred at "1053 hours."

*Rehaif* constitutes a "new rule" which should give him standing to pursue relief.[6]   Doc. 140 at 1-2.   Respondent addresses that claim as encapsulated within Bostic's ineffective assistance claim and rightly notes that Bostic did not include this argument in his Motion to Vacate or amendments and supplements.   Doc. 141.   He did, however, argue he was entitled to release based on *Rehaif* when he sought compassionate release and an appeal, which he did not receive or win.   Doc. 96 at 4-5; doc. 105.   In its Order denying compassionate release, the Court explicitly instructed Bostic that this argument constituted a collateral attack appropriately raised in a § 2255 motion, and yet, Bostic did not include it in his filings again until he responded to the Motion to Dismiss.   *See id*.

Bostic's *Rehaif* claim does not relate back to the previously asserted claims, as the facts surrounding this assertion are wholly irrelevant to those which he initially alleged.   Therefore, he cannot bring it now.   Even if the claim did relate back and even if the Court considered the claim, the record before the Court clearly indicates that Bostic knew he was not

---

[6] In *Rehaif*, the Supreme Court held that in a prosecution under 18 U.S.C. §922(g) and 924 (a)(2), the government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm, contentions which Bostic has not yet clearly articulated but that he likely believes apply to him.

allowed to have a gun, that he confessed having knowingly purchased a gun, and that he knew that, because he was a felon, this was unlawful. Doc. 99-5 at 12. *See United States v. Moore*, 954 F.3d 1322, 1337-38 (11th Cir. 2020) (denying *Rehaif* claim reasoning that it was "inconceivable" that the defendant was unaware of his convicted-felon status where he had previously served a lengthy sentence); *United States v. Reed*, 941 F.3d 1018, 1022 (11th Cir. 2019) (jury could have inferred that Reed knew he was a felon from his stipulation and from his testimony that he *knew* he was not supposed to have a gun.).   Thus, even if the claim were properly presented, Bostic cannot establish that his conviction was improper based on *Rehaif*.   His *Rehaif* claim should, therefore, be dismissed.

## V.   Conclusion

Bostic has failed to show that his trial and appellate attorneys were ineffective.   Moreover, his attempts to amend and supplement his original claims are ineffective because the untimely claims raised in those supplements do not relate back.   Accordingly, it is **RECOMMENDED** that Respondent's Motion to Dismiss, doc. 139, should be **GRANTED**, and Bostic's Motion to Vacate should be

**DENIED**, doc. 93.   Bostic's various Motions seeking amendment are likewise **DENIED,** docs. 94, 95, 138.

Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either.   28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant") (emphasis added). This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.   Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.   The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."   Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.   The

district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED, REPORTED, AND RECOMMENDED** this 11th day of May, 2023.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA